134 So.2d 232 (1961)
Abe STEIN and Alice N. Stein, his wife, Petitioners,
v.
Fred W. DARBY and Jack Darby and Seaboard Air Line Railroad, a corporation, Respondents.
SEABOARD AIR LINE RAILROAD COMPANY, Petitioner,
v.
Abe STEIN and Alice N. Stein, his wife, Respondents.
Nos. 31074, 31075.
Supreme Court of Florida.
October 11, 1961.
Rehearing Denied November 29, 1961.
*233 James H. Bunch, Jacksonville, for petitioners-respondents.
Botts, Mahoney, Whitehead, Ramsaur & Hadlow and Edward P. Mulcahy, Jacksonville, for respondents-petitioner.
THOMAS, Justice.
The above titled causes were consolidated by order of this court, were presented as one, and will be determined here accordingly.
The plaintiffs in the Circuit Court, the Steins, had alleged that property which they proposed to use as a site for a dwelling and *234 to promote agriculture and forestry was enclosed on the north, south and west by the lands of other owners and on the east by the right-of-way of Seaboard Air Line Railroad, 60 feet in width. Immediately east of the right-of-way and paralleling it is United States Highway No. 17. They claimed all the owners had refused them a way of ingress and egress and that the Seaboard Air Line Railroad Company had also declined to grant them such a way across its right-of-way.
The plaintiffs alleged that since 1881 a public road 60 feet wide had been established extending southward from their present property along the right-of-way of the railroad to a road running east and west across the right-of-way to what is now Highway 17. The respondents-Darby operate a sawmill on land adjacent to that of the Steins on the south, and the deed to the Darbys expressly excepted the land occupied by the road. Many years ago owners of land lying south of Steins' property conveyed to one another by partition deed describing the property conveyed by reference to a recorded map which showed exclusion of the land occupied by the road.
When the Darbys received the deed for their property in 1934 they built on the right-of-way of the road a lumber shed and warehouse which they have maintained ever since. Ten years later they and the railroad company arranged for the construction of a spur track from the main line across the road to their land. The Steins bought their property in 1955 in reliance upon the recorded plat. When they undertook to use the road as a means of reaching their property they were halted by respondents-Darby who threatened them and obstructed the road although it had been in use by the public nearly 75 years.
The Steins sought (1) a decree granting a way of necessity eastward across the right-of-way, or (2) a mandatory injunction for removal by Darbys of the obstructions they had erected, or (3) if the road was found to be a private one, a way of necessity over it for which they expressed a willingness to pay compensation.
This bill was dismissed and an appeal was taken by the Steins to the District Court of Appeal, First District. That court observed that the appellants' way of necessity was governed by Sec. 704.01(2), Florida Statutes, F.S.A., securing, under certain conditions, to an owner of land without a municipality which he used or proposed to use for agricultural or timbering purposes an easement over intervening lands.
The District Court of Appeal sustained the view of appellee-Seaboard that the complaint contained no allegation that the land lay outside a municipality, but rejected the contentions of appellees-Darby that there was defective establishment of the character of the road as a public one and that the appellants were chargeable with laches. The court thought that the question whether an outlet across the right-of-way or over the obstructed road was a more practicable route was one for decision by the chancellor founded upon proof.
Upshot of the decision was that there had not been a total failure to state a case against appellees-Darby and that the appellants should be permitted a limited time to amend, so far as appellee-Seaboard was concerned, to show that the land was situated beyond the limits of a municipality. Stein et ux. v. Darby et al., Fla.App., 114 So.2d 368.
Turning now to the opinion of the District Court of Appeal, when next the controversy reached that tribunal, we find that the appellants had, within the allotted time, amended their complaint to show that their property lay outside the limits of any municipality. Even so the chancellor granted a second motion of appellee-Seaboard to dismiss for failure to state a cause of action, and dismissed the complaint with prejudice.
The court considered first the effect of the amendment to preclude the railroad from *235 raising again, as a matter of pleading, the sufficiency of the complaint after it had been amended in conformity with the appellate court's decision on the first appeal.
Upon the first appearance of the case the Railroad had apparently urged affirmance of the ruling that the complaint failed to state a cause of action only because of the absence of the allegation with reference to location of the property, and the decision of the District Court of Appeal obviously directed that the cause go to trial if the pleading was amended to allege that the land lay outside a municipality. But on the second appearance the Railroad added two specific grounds in support of the chancellor's ruling, namely (1) that an attempt was being made to take its property unlawfully for private use pursuant to Sec. 704.01(2), Florida Statutes, F.S.A., and (2) that that act was unconstitutional as applied to the facts of the case. The chancellor ruled that the application of the statute to the facts detailed in the complaint would contravene Secs. 1 and 12 of the Declaration of Rights of the Constitution of Florida, F.S.A., and the Fourteenth Amendment of the Constitution of the United States.
We pause here to summarize. The case so far as it involved the Darbys rests in the Circuit Court awaiting trial and their interests need not now be further considered. As for the petitioner-Seaboard that would have been the situation, too, inasmuch as the complaint was amended to comply with the district court's ruling, had not a second motion to dismiss on the ground of failure to state a cause of action become the vehicle to convey to the District Court of Appeal the question of the constitutionality of Sec. 704.01(2), supra, as it affected the petitioner-Seaboard. The court seems to have frowned on the procedure nevertheless it accepted and decided the question.
The case came here on a petition of appellants for certiorari based on the claim that the decision of the District Court of Appeal treating of the constitutional question was in conflict with the decision of this court in South Dade Farms, Inc. v. B. & L. Farms Co., Fla.Sup., 62 So.2d 350, on the same point of law and it came here, too, on the certificate of the District Court of Appeal that the decision of that court was one passing upon a "question" of great public importance. It should be noted that the singular is used.
Under the provisions of paragraph two of Sec. 4(2) of Art. V of the Constitution as amended, this court "may review by certiorari any decision of a district court of appeal that * * * passes upon a question certified by the district court of appeal to be of great public interest, or that is in direct conflict with a decision of another district court of appeal or of the supreme court on the same point of law * * *." (Italics supplied.)
The controversy was brought to us via proceedings in certiorari under both provisions, that is to say, a certificate of the District Court of Appeal and a claim of conflict.
It is a bit difficult for us to determine precisely what question of public interest we are now expected to entertain by virtue of the certificate of the District Court of Appeal which is a condition precedent to the exercise of our power, but we apprehend that it is the treatment of jurisdiction of that court, for the scholarly opinion of Acting Chief Judge Sturgis [126 So.2d 315] at the outset bore the statement that although the parties had not questioned the power of the District Court of Appeal to review a "final decree of the trial court passing on the validity of a statute," nevertheless when jurisdiction appeared doubtful, the court itself should determine the point. There followed immediately the statement that the question which, in context, we understand to mean the question of jurisdiction to determine a matter such as was being presented, did "not appear thus far to have been presented to the Supreme Court [of Florida] for determination. *236 In deference to whatever disposition may be made by the Supreme Court in disposing of this decision * * *," said the court, "it [was] pertinent to acknowledge the apparent concept of the position of the Supreme Court * * * to provide uniformity in case law * * *." Of course, this introduced a provision not involved in the first phase of the present litigation which did not deal with conflicting opinions, though it does relate to the second petition as we shall see.
Then there appears a reference to that part of Sec. 4(2) of Art. V of the Constitution pertaining to appeals from trial court decisions which have directly passed on the validity of a statute and to the Supreme Court from a decision of a District Court of Appeal "initially" passing upon the validity of a statute.
The two procedures, certiorari in one case and appeal in the other, cannot be comingled. They deal with entirely different problems. And there is no reason here to treat of appeals from District Courts of Appeal to this court for two very good reasons, i.e., we are not confronted with an appeal, and obviously the District Court of Appeal has not initially passed on the validity of any statute, unless it be said that that court made an initial construction by declaring the statute constitutional without limiting the decision to validity of the law in its application to the facts alleged as the chancellor had done.
The ruling was not one determining the validity of a statute, or its invalidity, as contemplated by the amendment. It only showed that in the mind of the chancellor the act was invalid as applied to the facts peculiar to the litigation. This is patent from the language in his decree where he expressed the "opinion that the application of Section 704.01(2), Florida Statutes to the circumstances here related to the defendant Seaboard Air Line Railroad would constitute the exercise of a power in contravention to Sections 1 and 12 of the Declaration of Rights of the Florida Constitution and the Fourteenth Amendment of the Constitution of the United States; insofar as the Complaint alleges the existence of a public road over defendant Darby's lands the constitutionality of the statute is not involved. (Italics supplied.)
So the decision that reached the District Court of Appeal was not one which would remove from the statute books or leave there the challenged law. The law would remain for application in all causes when that application would not, due to relevant circumstances, amount to transgression of constitutional guaranties. Had the chancellor determined that the law itself was constitutional or unconstitutional irrespective of its application to pertinent facts the ruling would have been reviewable by direct appeal to the Supreme Court.
We conclude that the District Court of Appeal had the exclusive jurisdiction to determine the question presented to it. We do not consider that it "initially" made such a ruling as would be reviewable by this court even on direct appeal, and we are only repeating when we say that we are not dealing with an appeal anyway, but with petitions for certiorari.
In passing it may be said that the word "may" as used in connection with direct appeals is in no sense mysterious or mystical for it is followed by the words "as a matter of right." When read together they mean that one aggrieved by a decision that an act has been held directly constitutional or unconstitutional has a right, if he chooses, to go direct to the Supreme Court. It does not mean that he has the option of going there or to some other court.
Having the view that the District Court of Appeal was exercising jurisdiction vested in it, when it gauged the order entered in this particular case, we desist from discussing the views of the District Court of Appeal anent the related problems with which that court struggled. To do so would, in our opinion, amount to encroaching *237 on its territory. Before closing our comment on this phase of the litigation we say again for emphasis that had the chancellor passed on the validity of the statute as distinguished from the validity of its application, the appeal would have properly been taken to this court instead of the District Court of Appeal, or if improvidently taken to that court, the cause would have been transferred to this court under the rule. By determining simply the validity of the application the chancellor came to a conclusion that was properly reviewable by the District Court of Appeal.
Whether or not we were expected by issuance of the certificate also to decide the constitutionality of the act as applied to the facts of the case, as the chancellor did, or the validity of the act irrespective of the facts as the District Court of Appeal undertook to do, on the theory that such were matters of great public interest, is not clear. We think the former ruling was determinative of the principal aspect of the case once it was decided that a more elaborate presentation could be made upon the second appeal than upon the first.
We do not conclude that the certificate of the District Court of Appeal although a condition precedent to the exercise of our jurisdiction fixed upon this court an obligation to judge the merits of the act as it applied to the factual situation in this private litigation, much less to determine the constitutionality vel non, of the law for any purpose. We are not convinced that the matter of unconstitutionality as applied to the factual situation, assuming that the District Court of Appeal intended us to determine it as well as to solve the jurisdictional problem, is fraught with "great public interest."
It is true that in Susco Car Rental System of Florida v. Leonard et al., Fla.Sup., 112 So.2d 832, 834, a majority of this court agreed that such a certificate would withstand a challenge here that the question involved was not one of "great public interest" inasmuch as "the language of Article V [did] not, on its face leave the point open to contest in this forum." But this pronouncement was followed by the statement that "[o]ur jurisdiction in this class of cases is that we `may review by certiorari any decision of a district court of appeal * * * that passes upon a question certified by the district court of appeal to be of great public interest.'" (Italics were supplied by the writer of that opinion.)
Considering all the language used it is plain that the certificate is necessary to invest this court with the power to adjudicate a question a district court considers of such moment but it does not follow that this court is unalterably bound to decide the question for the pivotal auxiliary verb "may" which the court took the pains to italicize, denotes sanction or authority; it should not be construed as "shall" compelling this court to decide the merits of the question. Zirin v. Charles Pfizer & Co., 128 So.2d 594, 596.
Although we have embraced the question of relative jurisdiction and decided it, we reject the question of constitutional application if it be assumed that the District Court of Appeal meant to assign both instead of just the first.
We are now left to a consideration of the second certiorari by which we are urged to compare the opinion of the District Court of Appeal with our opinion in South Dade Farms v. B. & L. Farms Co., supra. It seems that this attempt is premature for the facts of the present case have not yet been set or the relief, if any, determined. As we have already noted, the Steins have claimed in the alternative three remedies: a right-of-way across the old road, which they contend the Darbys obstructed, a removal of the obstructions, and a right-of-way across the railway. We can only wonder whether the facts upon which the Steins rely, and will try to develop, will resemble those in the cited case but it is not our purpose to speculate. That *238 petition for certiorari is denied. The jurisdictional question has been answered. The question of constitutional application has been determined by the District Court of Appeal.
HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.
ROBERTS, C.J., and TERRELL, J., dissent.